| **United States District Court** | DISTRICT Eastern District of Pennsylvania | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>Miguel Nunez-Otero<br>Bienvenido Almonte<br>Zuleima Fournier | DOCKET NO. | |
| | MAGISTRATE'S CASE NO. 13-975M -1-3 | |

Complaint for violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2

| NAME OF JUDGE OR MAGISTRATE Honorable Carol S. Moore Wells | OFFICIAL TITLE U.S. Magistrate Judge | LOCATION Philadelphia, PA |
|---|---|---|
| DATE OF OFFENSE 6/17/2013 and 7/11/2013 | PLACE OF OFFENSE Philadelphia, Pennsylvania | ADDRESS OF ACCUSED (if known) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION

On or about June 17, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendant Binevinido Almonte distributed, and aided and abetted the distribution of, a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2.

On or about June 17, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants Miguel Nunez-Otero and Zuleima Fournier possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2.

On or about July 11, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants Miguel Nunez-Otero and Zuleima Fournier possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2. 841(a)(1) and Title 18 United States Code, Section 2.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

SEE AFFIDAVIT ATTACHED HERETO AND INCORPORATED BY REFERENCE.

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title) Kenneth Glenn |
|---|---|
| | OFFICIAL TITLE Special Agent Drug Enforcement Administration |

Sworn to before me and subscribed in my presence.

| SIGNATURE OF MAGISTRATE (1) Honorable Carol S. Moore Wells, Chief United States Magistrate Judge | DATE 8/15/2013 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

13-975 M -1-3

## AFFIDAVIT OF PROBABLE CAUSE

I, Kenneth J. Glenn, being duly sworn, state the following:

1.   I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code and other related offenses. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA), empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code (U.S.C.), Section 2516.  As such, I am an "investigative or law enforcement officer" within the meaning of Title 18, U.S.C., Section 2510(7).

2.   Your Affiant has been employed by the Drug Enforcement Administration (DEA), United States Department of Justice for approximately 12 years, currently being stationed in the Philadelphia Field Division.  Your Affiant was also stationed in the San Francisco Field Division for approximately ten years.  Prior to your Affiant's employment with the DEA, your Affiant was a Police Officer with the United States Capitol Police for four years.  Your Affiant was also a juvenile Probation Officer for the State of New Jersey for 1 ½ years and also a Police Officer for the Ocean City Police Department for one year.

3.   Since becoming a DEA special agent in 2002, I have participated in over 200 investigations of illicit drug-trafficking organizations.

4.   I make this affidavit in support of an application by the United States of America for the issuance of a warrant to arrest for the violations of Title 21, United States Code, § 841(a)1, to manufacture, distribute, or dispense, or possess with intent to

1

manufacture, distribute or dispense, a controlled substance and  § 846, conspiracy to distribute controlled substances.

5.   The information set forth below is derived from information known personally to me, on information received from other law enforcement agents and officers, and on information obtained through various investigative means.

6.      The purpose of this affidavit is limited, in that its sole purpose is to establish probable cause that certain crimes have been committed and that there is probable cause to believe that the individuals identified in this affidavit have committed these crimes.  Therefore, this affidavit does not contain every material fact that I have learned during the course of this investigation.  However, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

## Background on the Investigation and Facts Establishing Probable Caus

As part of an investigation by DEA Philadelphia, Pennsylvania Field Division ("PFD"), an individual tentatively identified as **Miguel NUÑEZ-Otero** was identified as a heroin Source of Supply (SOS).  Based on your Affiant's knowledge and participation in this investigation, he believes that **NUÑEZ-Otero** has multiple customers in the Philadelphia region.  Your Affiant further believes that **NUÑEZ-Otero** resides at 8809 Hargrave Street, Philadelphia, PA and is storing heroin, money and/or documents at the stash location, at 563 E. Comly Street, Philadelphia, PA 19120-1228.

## PROBABLE CAUSE: JUNE 17, 2013

7.      On June 17, 2013, **NUÑEZ-Otero** had a string of conversations with a woman identified as Zuleima FOURNIER, and an individual identified as Bienvenido ALMONTE.  These conversations were based on the premise that ALMONTE was going

2

to travel to New York to obtain an amount of heroin believed to be three (3) kilograms, and transport it to Philadelphia, where he was going to deliver it to **NUÑEZ-Otero**, or one of **NUÑEZ-Otero's criminal** associates (Fournier). **ALMONTE** travelled to an area in the Bronx, New York and then returned to his residence, located at 7870 Anita Drive, Philadelphia, PA: This is confirmed by both physical and electronic (GPS locator) surveillance.

8.     On June 17, 2013, at approximately 7:11 PM, **NUÑEZ-Otero** had a telephone conversation with ALMONTE, during which the two men arranged a meeting for an exchange of kilogram quantities of heroin. During this conversation, **NUÑEZ-Otero** told **ALMONTE** that he was going to send "the girl," (later identified as Zuliema FOURNIER) to meet **ALMONTE** later that night to pick up the heroin from him. **ALMONTE** informed **NUÑEZ-Otero** during the conversation that he was bringing "three" kilograms of heroin, and **NUÑEZ-Otero** stated that he was going to keep "one…half,,,or one and a half" of the kilograms of heroin for himself.

9.     On June 17, 2013, at approximately 8:30 PM, **NUÑEZ-Otero** and **ALMONTE** had another telephone conversation, during which the two men discussed **ALMONTE** making the delivery to "the girl" (Fournier) at a location at which "ALMONTE" and NUÑEZ-OTERO have met previously. During the conversation, **ALMONTE** expressed reservations about delivering the heroin to "the girl," and requested that **NUÑEZ-OTERO** meet with him himself.

10. On June 17, 2013, at approximately 8:39 PM, **NUÑEZ-Otero** and **ALMONTE** had another telephone conversation, during which the two men coordinated the delivery of heroin to "the girl" (Fournier), at a park near Magee Street and Bustleton

3

Avenue, in Philadelphia.   Although **ALMONTE** again expressed reservations about delivering the heroin to "the girl," **NUÑEZ-Otero** repeatedly assured **ALMONTE**, "That girl is fine."  The two men eventually decided that **ALMONTE** was going to deliver "one" kilogram of heroin to "the girl," and **NUNEZ-Otero** assured **ALMONTE**, "That is going to be paid by the guy and tomorrow I'll give you two (2) for the other one.

11.   On June 17, 2013, at approximately 9:05 PM, Agents observed an unknown male, carrying a bag, walking from the porch area of 7870 Anita Drive towards the front sidewalk. A few minutes later, Agents observed a silver Toyota minivan (JDP 3565) traveling toward the intersection of Anita Drive and Borbeck Ave.   The minivan traveled southbound on Whitaker Avenue and was followed by agents to the 1900 block of Magee Avenue, near the intersection of Magee Avenue and Bustleton Avenue, Philadelphia, PA.

12.   On June 17, 2013, between approximately 9:01 and 9:20 PM, **NUÑEZ -Otero** and **ALMONTE** had two additional telephone conversations, during which the two men coordinated the delivery to **FOURNIER**, with  **ALMONTE** instructing **NUÑEZ-Otero** to have Fournier meet him at the same place she had met him "the other day."

13.   On June 17, 2013, at 9:23 PM, Agents observed the Toyota minivan park on the south side of 1900 Magee Avenue, near the intersection of Magee Avenue and Bustleton Avenue, Philadelphia, PA.

14.   On June 17, 2013, at approximately 9:31 PM, Agents observed a blue Toyota Camry, bearing PA license plate HZL 1992, park directly behind the Silver minivan. Moments later, **ALMONTE,** exited the driver's seat of the minivan, and walked toward the passenger side of the blue Camry.  Agents then observed **ALMONTE** open the

4

passenger side door of the Camry and extend his arm into the vehicle.  **ALMONTE** then immediately reentered the silver minivan.

15.  On June 17, 2013, at approximately 9:32 PM, Agents observed the minivan pull away from the curb.  Agents then observed the minivan travel northbound through a driveway behind Bustleton Avenue.  At approximately the same time, Agents observed the blue Camry pull away from the curb and travel northbound on Bustleton Avenue. The Camry made a quick turn onto the 2100 block of Fanshawe Street, followed by Agents.

16.  On June 17, 2013, at approximately 9:33 PM, Agents observed the Camry, with flashers on, parked on the 2100 block of Fanshawe Street, near Leonard Street.

17.  On June 17, 2013, at approximately 9:33 PM, **NUÑEZ-Otero** and **ALMONTE** had another telephone conversation, during which the two men acknowledged that the delivery to **FOURNIER** had successfully concluded.

18.  On June 17, 2013, at approximately 9:40 PM, Officers of the Philadelphia Police Department, operating a marked Philadelphia Police vehicle, initiated a vehicle investigation on the Camry, and stopped the vehicle near the intersection of Tacony Street and Aramingo Avenue, Philadelphia, PA.  During the vehicle stop the Officers learned that the driver of the Camry, **Zuleima FOURNIER**, possessed a valid PA driver's license and a PA permit to carry a firearm.  **FOURNIER** was in possession of a "Glock 26" 9mm handgun, loaded with 9mm hollow point bullets, and failed to immediately notify the Officers of this fact once they initiated the vehicle investigation. During the traffic stop, **FOURNIER** gave the Officers consent to search the vehicle. The Officers were unable to discover contraband during their search.  Additionally, a Police

Officer with a certified K-9 dog performed a systematic search of the Toyota Camry, for the presence of the odor of narcotics. During the search, the K-9 alerted on the dashboard and front console area of the vehicle for the presence of narcotics, however, no narcotics were discovered.

## PROBABLE CAUSE: JULY 11, 2013

19.     On July 11, 2013, **NUÑEZ-Otero** and **FOURNIER** had a series of conversations concerning a one (1) kilogram of heroin transaction that was to occur later that evening. The initial portions of the conversation were in text format, and then moved on to voice conversations. The conversations centered on **NUÑEZ-Otero** ensuring that **FOURNIER** connected with Person #1, in order to take delivery of the kilogram of heroin for **NUÑEZ-Otero**. **NUÑEZ-Otero** also had a conversation with Person #1, during which the two of them discussed changing the site of the actual delivery to an area that was less crowded with people than the original delivery site, and one that does not have security cameras.

20.     On July 11, 2013, at approximately 6:45 PM, Agents conducted a traffic stop of **FOURNIER**, acting upon a ruse that a robbery had just occurred at the 7-Eleven store, and her vehicle met the description of the offender's. **FOURNIER** admitted that she had been in the area of the 7-Eleven store, but that it was not she who was involved. An Agent asked **FOURNIER** if there was stolen merchandise in the bag that was in plain view on the front passenger seat, next to her purse. **FOURNIER** stated that there were "drugs" in the bag, and that she could not believe that she had been stopped with them. Agents asked **FOURNIER** what she was doing with the drugs, and she stated that she was supposed to deliver them to someone, but she did not know what type of drugs they

6

were.  Agents observed **FOURNIER's** telephone began to ring with an identified caller

of "Jo."  Agents asked **FOURNIER** who "Jo" was, and she stated that she was supposed

to take the drugs to "Jo."  **FOURNIER** was handcuffed and transported to the

Philadelphia Police Department 2nd District to be processed.  The approximate kilogram

of substance was field-tested, and produced a positive result for the presence of a

detectable amount of heroin.  At the time of her arrest, **FOURNIER** was the sole

occupant of the vehicle.

21.     After Agents read **FOURNIER** her Miranda Rights, they questioned

**FOURNIER**, who provided them with the name of "Jo or Joel," for the individual from

whom she had received the "bag."  **FOURNIER** further related that she was to deliver

the bag to an unknown individual.  **FOURNIER** also provided several phone numbers

that were in her phone directory, that were known to Agents as previously belonging to

**NUÑEZ-Otero** .  **FOURNIER** also stated that this was only the second time she had

ever done this for "Jo/Joel," and that the first time was in late April/early May, when she

did a $5,000 money drop, and received $500 as compensation for doing so.  FOURNIER

also stated that she had not spoken to "Jo/Joel" since that time, until the evening of July

11, 2013, when he called her and gave her the bag to deliver to the unknown male.

Agents asked FOURNIER how she contacted "Jo/Joel," and she stated that she called

him on the telephone.  Agents also asked whether FOURNIER had ever texted "Jo/Joel,",

to which she adamantly replied that she had <u>never</u> texted him, and that she only called

him on the phone.  Your Affiant knows from this investigation that **FOURNIER**

predominately contacted **NUÑEZ-Otero** via text.  **FOURNIER** also changed her story

several times, denying that she knew that there was any type of narcotic in the bag that

7

was recovered in her vehicle, and disputing the number of times that she had been in contact with the person that she was calling "Jo/Joel." Your Affiant knows from this investigation that other individuals with whom **NUÑEZ-Otero** deals refer to him as "Joel," and that **NUÑEZ-Otero** sometimes identifies himself to other persons with whom he is speaking as "Joel."

22. The ensuing conversations between **NUÑEZ-Otero** and Person #1 grew increasingly frantic as they could not locate **FOURNIER**. At one point **NUÑEZ-Otero** was observed by surveillance Agents looking inside **FOURNIER'S** vehicle to see if she was inside.

## INDIVIUALS TO BE ARRESTED

NUÑEZ-Otero, Miguel; DOB 08/31/1986 Hispanic Male, 5'8 tall/175 lbs.

ALMONTE, Bienvenido; DOB 03/14/1966, Hispanic Male, 5'11 tall/160 lbs.

FOURNIER, Zuleima; DOB 08/13/1982, Hispanic Female 4'9 tall/100 lbs.

For the reasons set for above, I respectfully request that arrest warrants be issued for each of the individuals named above, for the following crimes:

June 17, 2013 incident

Miguel NUNEZ-Otero, Zuleima FOURNIER, and Bienvenido ALMONTE:

18 United States Code, Section 2: Aiding and abetting the possession with intent to distribute and distribution of one kilogram or more of heroin

8